**MOHLER et, Plaintiffs-Appellees, v. BAKER et, Defendants-Appellants.**

Ohio Appeals, Second District, Montgomery County.

No. 2123.   Decided November 17, 1950.

Nolan & Boesch, Dayton, for plaintiffs-appellees.
George F. Holland, Dayton, for defendants-appellants.

## OPINION

By WISEMAN, J:

This is an appeal on questions of law from the Common Pleas Court of Montgomery County which directed a verdict in favor of the plaintiffs.   The plaintiffs brought an action on a promissory note and for foreclosure of a mortgage executed to secure said promissory note on a piece of real estate sold by the plaintiffs to the defendants.   The defendants, in their second amended answer and cross-petition, admit the signing of the note and mortgage but deny that there is any sum due the plaintiffs upon said note and further allege:

"* * * that there has been a failure of the consideration herein in this, that said note and mortgage was given by these Defendants to secure the payment of a balance due on the purchase of a dwelling house * * *.

"Defendants further answering say that said dwelling house was constructed by the Plaintiffs herein; that said dwelling house was a California type bungalow constructed of cement and cement blocks, with a flat roof; that said Plaintiffs represented to these Defendants that the construction of the said dwelling house was proper and that the same would be durable against the weather, stating that the said dwelling house would not leak and would not sweat; that these Defendants relying upon the representations of said Plaintiffs purchased said home and executed said note and mortgage and said Defendants moved into said dwelling house.

"Defendants further answering state that the said dwelling house did not shed water, as the same leaked and sweat; that all times the walls were damp; that the cement around the walls and windows would not set and become hard; that the cement is soft and can be removed with the fingers; that the doors in said dwelling house mildewed; that the roof leaked; that all the doors in said dwelling house swelled so that they could not be closed; that the floors in said dwelling have become uneven; that there is water on the floors at all times.

"Defendants further answering and by way of defense state that the heating equipment for said dwelling house was a gas furnace in the basement; that the same was placed in a hole in said basement; that the said hole containing said furnace had no drain; that the same filled with water; that said gas furnace would not and could not operate.

"Defendants further answering and by way of Cross-Petition make the Answer herein a part of said Cross-Petition as if the same was rewritten herein, and further state, that as a result of the condition of said dwelling house that their personal goods, furniture, rugs, chairs, beds and other household furnishings have been damaged by the dampness of said residence and have mildewed, all to their damage in the sum of Two Thousand Dollars ($2,000.00)."

To the defendants' second amended answer and cross-petition the plaintiffs filed a reply in the nature of a general denial.

Upon the trial of the case the defendants, in making defense, sought to introduce evidence as to the representations made by the plaintiffs as alleged in the defendants' answer. The defendant, Taylor Baker, testified as follows:

"Q. Well, did you ask him about the property, about weather conditions?

A. I asked him if it would sweat or leak and he told me no.

Q. You asked him if it would sweat or leak?

A. That's right.

Q. That was how long before?

A. It was a few days before we bought the property.

* * *

Q. He said that it would not leak?

A. That's right."

This testimony was afterwards stricken. Later the defendant testified as follows:

"A. Mr. Mohler told me that the—and my wife—that it would not leak and would not sweat; that it was well constructed."

Upon objection being interposed by counsel for the plaintiffs the answer was stricken. Later counsel for the defendants asked the witness this question:

"Q. I believe you stated—now, don't answer the question—did he or did he not tell you—and this is before the deed was made—that this house would not leak and it would not sweat?"

An objection was sustained to this question. A prolonged discussion took place between counsel and the trial judge relative to the nature of the defense of the defendants and the basis for recovery on their cross-petition and the admissibility of evidence in respect thereto. The trial court took the position that there were three possible theories on which the defendants could proceed. First, fraud; second, breach of warranty; and third, innocent misrepresentation. Counsel for the defendants stated that they were not relying on fraud nor breach of warranty. From the record it does not clearly appear on what principle of law defendants were basing their defense and seeking their right of recovery on the cross-petition. Apparently it was based on innocent misrepresentation. The court took the view that this defense would not be available to the defendants unless the defendants had rescinded the contract and tendered back the consideration in an effort to place the plaintiffs in statu quo.

In our opinion the record shows a misconception of the nature of the defense and their right of recovery on their

cross-petition. This case falls within the principle of law laid down in **Gleason v. Bell, 91 Oh St 268, 110 N. E. 513**, wherein the court held in the first paragraph of the syllabus as follows:

"Where a purchaser was induced to buy and pay for a city residence, by false representations made to him by the vendor as positive statements of fact clearly implying knowledge of the owner of the truth of the facts stated, and made under such circumstances that the vendor should have known of the falsity of the representations, and they were of such a nature as to affect the character, utility and value of said property, and the purchaser had a right to and did rely thereon, and suffered damage by reason thereof, he may recover. In such a case an averment that the vendor knew the representations to be false and made them with intent to deceive is not essential."

The court on page 275 said:

"Under the circumstances detailed in this petition it is not incumbent upon the plaintiff to aver and prove that the defendant knew the representations were false and made with intent to deceive. The facts set up in this petition show that the party making the representations should have known whether they were true or false, and further show that they were made not as an expression of opinion but as positive statements of fact, with the intention that they should operate as an inducement to the sale of said premises. The recital of the transaction in the petition sufficiently shows that the representations were so made as to imply that the maker knew them to be true and intended that his statements should be so understood, believed and relied upon and operate as an inducement to the purchase of the premises.

" 'A positive statement implies knowledge, and if the party who makes it has no knowledge on the subject, he has told scienter what is untrue; he has affirmed his knowledge.' 1 Bigelow on Fraud, 513."

The court in Gleason v. Bell cited with approval **Aetna Ins. Co. v. Reed, 33 Oh St, 283**. The court in that case held that:

"An action will lie for a false representation of a material fact, whether the party making it knew it to be false or not, if he had no reason to believe it to be true, when made, and it was done with the intention of inducing the person to whom

made to act upon it, and the latter does so, sustaining a damage in consequence."

In **Mulvey v. King, 39 Oh St 491**, the court held:

"Where a person by means of false representations of facts materially affecting the identity and value of certain real estate, induces another to enter into a contract for the purchase thereof, upon the faith of such representations, and upon which he was justified in relying, the purchaser may, in an action brought by the vendor for the purchase price, recoup the damages which he has sustained by reason of such false representations, although the vendor believed them to be true when made, and had good reason for so believing."

On page 494 of the opinion the court said:

"It may be considered as well settled in this state, by the cases above cited, that an action for damages caused by misrepresentation cannot ordinarily be maintained, without proof of actual fraud, or such gross negligence as amounts to fraud. When, however, a person claims the benefit of a contract into which he has induced another to enter by means of misrepresentations, however honestly made, the same principles cannot be applied. It is then only necessary to prove that the representation was material and substantial, affecting the identity, value or character of the subject-matter of the contract, that it was false, that the other party had a right to rely upon it, and that he was induced by it to make the contract, in order to entitle him to relief either by rescission of the contract or by recoupment in a suit brought to enforce it."

On page 495 the court said:

"But the testimony also fully proves that King was guilty neither of fraud nor of gross negligence in making those representations, his mistake having been occasioned by that of a surveyor in previously establishing the boundary line.

"The facts thus proved bring the case within the principles above stated and give a right of recoupment in an action for the balance of the purchase money, to the extent of the deficiency in the value of the property purchased. The rights of the purchaser do not rest upon the ground of fraud, actual or constructive, but that, to the extent of the difference in value between the property as it was represented to be, and the property conveyed, there is no consideration for his promise."

The court in Gleason v. Bell also cited in support of this principle of law the case of **Pierce v. Tiersch, 40 Oh St 168,** which held:

"In an action by mortgagee against mortgagor upon a note and mortgage given for the purchase money of the premises, ▌the mortgagor may, as a defense, set up a counter-claim for damages by reason of the fraud of the mortgagee, in concealing from him material facts as to the situation and extent of the premises."

On page 172 the court said:

"And furthermore, in an action against the mortgagor for the purchase money, his right to set up a counter-claim ▌for any excess in price through the vendor's misrepresentations of the extent of the property, would be the same, whether such misrepresentations were wilful or innocent."

The case of Gleason v. Bell was followed in **Fries v. Gannon, 9 Oh Ap 387.** See also **Fillegar v. Walker, 54 Oh Ap 262,** 6 N. E. (2d) 1010.

In a similar case, wherein the action was instituted by the vendee against the vendor for damages by reason of false representations made respecting the construction of the residence purchased this Court, in an unreported case, in Fiebig, et al. v. Brofford, et al., Court of Appeals of Franklin County, decided March 10, 1950, followed Ins. Co. v. Reed and Gleason v. Bell and held that: "In an action of this character it is not necessary to allege or prove scienter, or that the representation was made with the intent to deceive."

On the question of the admissibility of such testimony although a deed had been delivered which did not contain such representations, see Fries v. Gannon, supra; **Drew v. Construction Company, 140 Oh St 1, 6, 41 N. E. (2d)** 1018.

In the case at bar the defendants' answer, on its face, states a good defense although it would be strengthened by certain amendments. The evidence sought to be introduced was admissible and the court committed error prejudicial to the rights of the defendants in striking this evidence. No other error assigned is well made.

**Judgment** reversed and cause remanded for further proceedings according to law.

MILLER, PJ, and HORNBECK, J, concur.